IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN MCGORAN<br>105 West Laurel Avenue<br>Cheltenham, PA 19012<br><br>*Plaintiff,*<br><br>vs.<br><br>SCHOOL DISTRICT OF PHILADELPHIA<br>440 North Broad Street<br>Philadelphia, PA 19130<br><br>-and-<br><br>MARILYN E. QUARTERMAN<br>6701 N. 13th St.<br>Philadelphia, PA 19126<br><br>*Defendants.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through undersigned counsel, hereby files the following Complaint against each Defendant:

### INTRODUCTION

1. Plaintiff initiates this action to seek redress against each Defendant for unlawful violations of Title VII of the Civil Rights Act ("Title VII") and other applicable law.

### PARTIES

2. Plaintiff, Karen McGoran ("Plaintiff") is an adult individual currently residing at the above-captioned address.

3. Defendant, School District of Philadelphia ("Defendant School District") is a public-school district organized pursuant to the laws of the Commonwealth of Pennsylvania with a principal place of business at the above-captioned address.

4. Defendant Marilyn E. Quarterman ("Quarterman") is an adult individual employed at the above-captioned address liable as an aider and abettor under the Pennsylvania Human Relations Act and individually under 42 U.S.C. § 1981.

5. At all times relevant hereto, Defendant School District acted by and through its agents, servants, and employees, including Defendant Quarterman, each of whom, at all times relevant, acted within the scope of his or her job duties.

6. Defendant School District is an "employer" within the meaning of Title VII because it is engaged in an industry affecting interstate commerce and because they maintained or maintain fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

7. Defendant School District also maintains sufficient employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

## JURISDICTION and VENUE

8. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

9. The Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial

justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

13. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

14. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under Title VII and the PHRA.

15. Plaintiff filed a written charge of discrimination with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission alleging

discrimination on or about November 20, 2013 (No. 17F201460239 / PHRC Number 201303174).

16. The instant action is timely because it is initiated within ninety ("90") days after the receipt of a Right to Sue letter from the U.S. Department of Justice, Civil Rights Division, mailed on or about June 6, 2017.

17. Plaintiff has exhausted administrative remedies as to the allegations of the instant Complaint.

## FACTUAL BACKGROUND

18. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

19. Plaintiff is a Caucasian female of British origin.

20. Plaintiff was born in England.

21. Plaintiff was formerly a teacher of Ellwood Elementary School ("Elwood") until her unlawful termination on or about June 19, 2014 while her administrative charge was pending before the agencies above-referenced.

22. The student population at Ellwood was predominantly African-American at the time of Plaintiff's employment.

23. Plaintiff was supervised by Marilyn E. Quarterman, an African-American, who served as Ellwood's principal.

24. During the course of her employment up until her unlawful termination, Plaintiff was subjected to vindictive reverse race discrimination and harassment by Quarterman.

25. By way of example, during the course of Plaintiff's employment, Quarterman refused to give Plaintiff her own classroom and generally treated her very poorly in comparison to her African-American colleagues.

26. Quarterman would often selectively enforce rules against Plaintiff, but not African-American teachers.

27. On or about December 13, 2011 through March 6, 2012, an African American student used school computers and a program licensed by the School District called "Achieve 3000."

28. The student used the program to send Plaintiff hate mail and even threatened to kill Plaintiff.

29. Quarterman took no action, but in fact allowed the student to return to Ellwood after he was expelled for a violent act.

30. The student eventually returned to serve as an Ambassador for Ellwood on a Back to School night where he would escort students and parents.

31. Quarterman also made discriminatory remarks to Plaintiff such as "You don't understand our culture" and gave her negative performance evaluations for lacking "awareness…of student backgrounds and culture."

32. Quarterman refused to offer Plaintiff any support in an effort to set her up for failure.

33. When Plaintiff sent a student to Quarterman's office, Quarterman refused to take any action and would simply send the poorly behaved student back to the classroom.

34. Quarterman also said to Plaintiff at one point, "Ms. McGoran, I must say your Englishness, *together with your whiteness*, is offensive."

35. On or about March 8, 2013, Plaintiff filed a union grievance against Quarterman.

36. Less than a month later, Quarterman began a relentless campaign of retaliation, harassment and intimidation toward Plaintiff by manufacturing incidents in an attempt to justify discipline and eventual termination of Plaintiff.

37. Before April 2013, Plaintiff had an unblemished disciplinary record.

38. Less than two months after serving Quarterman with a grievance, Plaintiff was dealt three unfounded disciplinary actions.

39. In one incident, Plaintiff had an unruly student and called a foster parent to curb the behavior.

40. Quarterman then told all of Plaintiff's students to go into the auditorium and write negative statements about Plaintiff.

41. Quarterman then used those statements, out of context, as a basis to issue an SHE-204, a disciplinary measure.

42. On or about April 24, 2014, Quarterman asked a close friend and African-American teacher, Edwena Burnette, to write a false negative letter about Plaintiff.

43. Quarterman again told Plaintiff's students to write untrue and biased statements about her to be used as pretextual basis to impose an SHE-404.

44. On or about May 3, 2013, Quarterman then claimed Plaintiff had an improper conversation with a student about the previous disciplinary forms and used that as an additional basis to pretextually impose a third SHE-404 discipline.

45. As a result of the bogus disciplinary forms, Plaintiff was suspended for 16 days unpaid and received an "unsatisfactory" rating for the 2012-2013 school year.

46. Moreover, the discipline became a part of her official personnel file.

47. Quarterman also reassigned Plaintiff from 5th grade to 1st grade even though Plaintiff had no experience teaching 1st graders.

48. Moreover, Quarterman took action(s) in an attempt to segregate Caucasian teachers from African American teachers.

49. Specifically, Quarterman placed as many Caucasian teachers as possible on the first floor of the building and African-American teachers on the second floor.

50. Plaintiff was unlawfully terminated on or about June 19, 2014 while her administrative charge was pending, which was an act of retaliation for the filing of the charge and other protected activity by Plaintiff.

## COUNT I
### Title VII Violations
### Plaintiff v. Defendant School District

51. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

52. At all times relevant herein, Plaintiff was subjected to discriminatory actions by virtue of race and national origin.

53. At all times relevant herein, Plaintiff was subjected to unlawful retaliation by virtue of her engagement in protected activity.

54. At all times relevant herein, Plaintiff was subjected to an unlawful hostile-work environment.

55. As a direct and proximate result of these violations, Plaintiff has sustained the injuries, damages and losses set forth herein.

## COUNT II
### Reverse Race Discrimination 42 U.S.C. § 1981
### Plaintiff v. All Defendants

56. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

57. At all times relevant herein, Plaintiff maintained or sought to maintain a contractual relationship with Defendant School District.

58. At all times relevant herein, Defendant School District acted by and through its agents, servants, and employees to intentionally discriminate against Plaintiff on the basis of race and thereby deny the benefits of the contractual relationship entered or sought to be entered into with Defendant School District by discriminating on the basis of race.

59. Defendant Quarterman is also liable as an individual supervisor under §1981.

60. At all times relevant herein, Plaintiff was subjected to unlawful retaliation by virtue of her engagement in protected activity.

61. At all times relevant herein, Plaintiff was subjected to an unlawful hostile-work environment.

62. As a result of Defendants' unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

## COUNT III
### Pennsylvania Human Relations Act
### Plaintiff v. All Defendants

63. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

64. The foregoing discrimination and retaliation by Defendants also violates the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

65. As a result of Defendants' violations of the Pennsylvania Human Relations Act, Plaintiff has suffered damages, as set forth herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against each Defendant and that it enter an Order as follows:

a. The Defendants are to be permanently enjoined from engaging in discrimination against the Plaintiff on any other basis prohibited under applicable law;

b. The Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and are to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

c. The Defendants are to be prohibited from continuing to maintain their unlawful policy, practice, or custom of discriminating against employees and are to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d. The Defendants are to compensate the Plaintiff, reimburse the Plaintiff, and to make Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded those benefits illegally withheld from the date the Plaintiff first suffered

discrimination at the hands of the Defendants or their agents until the date of verdict;

e. The Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by the Defendants' actions to the extent they are available as a matter of law;

f. Only to the extent available as a matter of law, Plaintiff is to be awarded punitive damages.

g. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h. The Plaintiff is to be awarded the costs and expenses of this action and attorneys fees as provided by applicable federal and state law;

i. Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law and to reflect the tax consequences thereof;

j. The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure the Defendants do not engage – or cease engaging – in unlawful retaliation against Plaintiff or other witnesses in this action;

k. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l. Plaintiff demands trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.

Respectfully submitted,

KOLMAN ELY, P.C.

/s/ W. Charles Sipio
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated: September 5, 2017